UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**KRYSTAL CARTER,**

    **Plaintiff,**

v.                                             Case No: 5:23-cv-117-JSM-PRL

**OASIS TROPICAL CAFE, LLC and
ALBERTO VAZQUEZ,**

    **Defendants.**

_____

**REPORT AND RECOMMENDATION**[1]

Before the Court in this employment discrimination case is the plaintiff's motion for default judgment. (Doc. 45). Plaintiff's current motion corrects some of the previously noted deficiencies in her prior motions for default judgment, but her complaint is too deficient to grant the relief requested. As such, I recommend that the plaintiff's motion be **denied**.

**I.   BACKGROUND**

From "2017 to August 31, 2021[,]" Plaintiff alleges that she was a manager working for Defendant Oasis Tropical Café, LLC ("Defendant Oasis") and Defendant Alberto Vazquez ("Defendant Vazquez"), "prepar[ing] food and serv[ing] customers."[2] (Doc. 1 at ¶¶ 2, 17, 25). Plaintiff says that she was constructively discharged after not being paid for "at

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Plaintiff says her work "was an integral part of" the defendants' business (the defendants are "in the business of providing food and drinks to the general public"). (Doc. 1 at ¶¶ 33–37).

least two weeks of work" that month,[3] and witnessing (as well as being subject to) increasingly "irrational," racially discriminatory, and sexually harassing comments from Defendant Vazquez, for whom she worked. *Id.* at ¶¶ 14–55.

Specifically, Plaintiff alleges that Defendant Vazquez texted her and that she witnessed Defendant Vazquez "call black patrons n****r's and try to rush them out of the restaurant as quickly as possible[;] make comments about [her] race, [like] call her a n****r on several occasions[;] refer to her as 'ghetto[;]' call her [African-American] boyfriend a 'monkey'[;][4] threaten to lynch [her] boyfriend from a tree while setting him on fire[;]" and send her texts "threatening to 'blow [her boyfriend's] head off.'" *Id.* at ¶¶ 44–55. Moreover, Defendant Vazquez allegedly sent Plaintiff "sexually suggestive texts" and made "repeated comments about her body . . . and what he would do to her, in a sexually suggestive manner." *Id.* at ¶¶ 41–55.

Plaintiff says that Defendants Oasis and Vazquez controlled her work and that when she "complained about the illegal practices . . . , describing Defendants' management . . . , Defendants took no action to stop the illegal practices."[5] *Id.* at ¶ 39. Ultimately, Plaintiff was "constructively discharged . . . on August 31, 2021." (Doc. 1 at ¶ 55).

---

[3] Plaintiff says that, otherwise, she "was paid $15.00 per hour." (Doc. 1 at ¶¶ 26–27).
[4] Plaintiff alleges that this relationship began in August of 2021—the same year and month the circumstances were purportedly such that she was constructively discharged. (Doc. 1 at ¶¶ 49, 55).
[5] Plaintiff does not explain who, if anyone, she complained to. Given that the plaintiff claims Defendants Vazquez and Oasis shared responsibility for and controlled her work, and that it appears Defendant Vazquez is (or was) the owner of Defendant Oasis (or had some control in the entity) it seems sufficient to infer that a complaint could have been made to either. (Doc. 1 at ¶¶ 33–37). Plaintiff also attaches to her instant motion for default judgment what appears to be a photo of a screenshot of some of the racially-discriminatory texts Defendant Vazquez sent to Plaintiff about her boyfriend (Doc. 45-5), accompanying that screenshot sent to Defendant Vazquez is her message, "I hope I get paid today or I'm going to share every fked [sic] up shit u [sic] ever said to me[.]" *Id.*; *see* (Doc. 45 at 13 (referencing exhibit)).

On February 17, 2023, Plaintiff initiated this suit against Defendant Oasis and Defendant Vazquez. (Doc. 1). On October 9, 2023, through counsel, the defendants filed an answer to the complaint. (Doc. 11). However, on September 8, 2023, the Court granted the motion of Defendants' counsel to withdraw, stating that Defendant Oasis could only appear through counsel, and its failure to retain counsel within thirty days "may result in a default judgment."[6] (Doc. 21 at ¶ 3). Defendant Oasis did not have new counsel file a notice of appearance, and on November 3, 2023, the Court directed the defendants to show cause, within fourteen days, why they had failed to comply with the Court's order. (Doc. 26).

Again, the Court informed the defendants that if they failed to respond to the Court's order, "the Court will enter defaults against them." *Id.* Despite this second warning, the defendants failed to respond. Ultimately, default was entered against the defendants. (Doc. 49). As such, the motion for default judgment (Doc. 45) is now ripe for consideration.

Plaintiff's motion seeks default judgment as to Counts I–IV against the defendants and states that "Plaintiff dismisses" Counts V and VI (alleging violations of the minimum wage under Florida law). (Doc. 45 at 2, 11)

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). A defendant who defaults is deemed to have admitted all well-pleaded allegations of fact in a complaint. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d

---

[6] Further, the Court gave Defendant Vazquez thirty days to file notice of appearance for newly retained counsel or to notify the Court that he was proceeding pro se. (Doc. 21). However, Defendant Vazquez did not do either, even after the Court's Order to show cause. (Doc. 26).

1200, 1206 (5th Cir. 1975); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). As a result, a court may enter a default judgment against a party who has failed to respond to a complaint, assuming the complaint provides a sufficient basis for the judgment entered. Fed. R. Civ. P. 55; *Tyco Fire & Sec., LLC*, 218 F. App'x at 863; *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted).

In entering a default judgment, a court may award damages if they are adequately supported by the record. *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985); *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007) (plaintiff's "allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages"). Under Rule 55(b), the court may hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient evidence in the record. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011).

### III. DISCUSSION

#### A. Plaintiff fails to sufficiently identify the defendant

The plaintiff requests the entry of default judgment against the "defendants" but fails to identify which defendant did what and which defendant the claim is against in Counts I through IV. Thus, the motion for default judgment is due to be denied on this basis alone.

To begin with, the Court notes that only Counts V and VI (the Counts the plaintiff seeks to dismiss) expressly identify a defendant: Count V, while confusingly referring to "defendants" in the allegations and prayer for relief, is expressly titled "against Defendant Oasis Tropical Café, LLC;" and Count VI, the only count to name Vazquez directly in the

allegations, also confusingly demands relief from the "Defendants," but is expressly titled "against Defendant Alberto Vazquez, Individually."

As to the pertinent Counts (I through IV), Plaintiff doesn't expressly name either defendant in the title (like she did in Counts V and VI) and doesn't otherwise expressly identify either defendant throughout the allegations and prayer for relief—instead generally referring to "defendant" or "defendants," leaving unclear which one is intended.[7] A plain reading of the allegations alleged in each of those counts appears to read as if they are only against Oasis, the employing entity, but the Court should not have to guess. And perhaps as importantly, the motion seeks a default judgment against both defendants, despite this deficiency.

These Counts, for example, do not re-allege and adopt the allegations that Defendant Vazquez is a party (Doc. 1 at ¶ 4) and instead exclude that allegation. *See, e.g.,* Doc. 1 at ¶¶ 3–4, 56, 67, 76, 85. These Counts also fail to mention Vasquez directly. Further, Count I itself only references a single defendant and notes that this defendant acted through "its agents and employees;" Count II similarly references a single defendant and says this defendant "engaged in unlawful employment practices;" Count III, like Counts I and II, repeatedly refer to a single defendant and, in the opening allegation of this Count (see Doc. 1, ¶ 77), Plaintiff refers to her "employment with Defendant" and notes that the harassment was perpetuated by her "supervisors," making it seem that the defendant referenced is the employer itself, Oasis; and Count IV has the same identification issues as Count III (*see, e.g.,* Doc. 1, ¶ 87), but unlike the others mixes in the collective "defendants" to a few allegations, only to tie the allegations together with an assertion (like Count III) against a single defendant (*see, e.g.,* Doc. 1, ¶¶ 84 & 95, which both only state "As a direct and proximate result of **Defendant's** harassing and hostile sexual environment, Plaintiff suffered great embarrassment, humiliation, and mental and physical

---

[7] The Court previously noted these problems (see Doc. 42 at 3 n.3 (citing Doc. 1 at ¶¶ 3–4, 56, 67, 76, 85)), but they have not been corrected or clarified.

anguish."). Thus, the plaintiff's motion for default judgment on Counts I–IV against both defendants is due to be **denied**.

### B. Plaintiff's allegations fail to establish liability

While a defendant who defaults is deemed to have admitted all well-pleaded allegations of fact in a complaint, *see Nishimatsu Const. Co.*, 515 F.2d at 1206, the allegations must be sufficient and well-pleaded. Here, even if the Court could discern who the claims are against in Counts I—IV or assume they are against Oasis, the allegations pleaded are insufficient.

#### 1. Count I: Gender Discrimination in Violation of Title VII

Plaintiff appears to claim that Defendant Oasis violated Title VII by subjecting her to discrimination based on her gender. (See Doc. 1, Count I; Doc. 45 at 3). To prevail on a claim of gender discrimination under Title VII, Plaintiff must establish that "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated [male] employees . . . more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir.2003) (*per curiam*)); *see Garcia v. Unit Dose Servs., LLC*, No. 0:23-CV-61352, 2023 WL 6962827, at *2 (S.D. Fla. Oct. 2, 2023), *report and recommendation adopted*, No. 23-61352-CV, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023).

Here, while it appears that the first three elements are satisfied by Defendant Oasis's failure to defend (and thus admission of these facts),[8] the plaintiff has failed to allege facts

---

[8] Specifically, by failing to defend, Defendant Oasis admits that Plaintiff was female, and thus was a member of a protected class. (Doc. 1 at ¶¶ 14–16, 41, 57). Further, by failing to defend, Defendant Oasis admits that Plaintiff was qualified to be a manager, prepare food, and serve customers. (Doc. 1 at ¶¶ 25, 37). Third, Plaintiff alleges that she was constructively discharged on August 31, 2021, which Defendant Oasis admits is an adverse employment action through its default. (Doc. 1 at ¶¶ 55, 61).

supporting the fourth element—that is, that Defendant Oasis "treated similarly situated [male] employees . . . more favorably." Indeed, the complaint does not "even try to draw a stick figure[,]" of comparators. *Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-CV-695-FTM-38MRM, 2020 WL 321372, at *6 (M.D. Fla. Jan. 21, 2020). Instead, all that is provided is the conclusory allegation that "Defendant did not subject the male employees to discriminatory treatment." (Doc. 1 at ¶¶ 59, 60, 62); *see Gilliam v. U.S. Dep't of Veterans Affairs*, No. 2:16-cv-255-FtM-29UAM, 2019 WL 1383156, at *3-4 (M.D. Fla. Mar. 27, 2019) ("because Plaintiff has failed to identify an adequate comparator, his race, national origin, and gender discrimination claims are facially implausible"). Notably, the complaint does not even allege that these nebulous "male employees" were also managers, like the plaintiff.

Accordingly, because the fourth element of gender discrimination has not been established with regard to Count I, Plaintiff's motion for default judgment for employment discrimination on the basis of sex under Title VII should be **denied**.

### 2.   Count II: Gender Discrimination in Violation of the FCRA

In Count II, Plaintiff similarly asserts a gender discrimination claim under the Florida Civil Rights Act (FCRA). Under the FCRA, however, gender discrimination receives the same analysis as under Title VII. *Ware v. City of Panama City*, 762 F. App'x 949, 950 n.1 (11th Cir. 2019) (per curiam) (citing *Holland v. Gee*, 677 F.3d 1047, 1055 n.1 (11th Cir. 2012)); *see Crawford*, 529 F.3d at 970 (citing *Knight*, 330 F.3d at 1316); *see Davis v. UPS Freight Servs., Inc.*, No. 14-CIV-60183, 2014 WL 4376145, at *3 (S.D. Fla. Sept. 4, 2014) (analyzing Title VII and FCRA claims simultaneously). Accordingly, because Plaintiff has failed to establish the elements of gender discrimination under Title VII, Plaintiff's motion for default judgment as to Count II is also due to be **denied**.

*3.     Count III: Sexual Harassment in Violation of Title VII*

In Count III, Plaintiff claims that one or more of the defendants violated Title VII by subjecting her to a sexually discriminatory and hostile environment. (Doc. 1 at 11–12). She also generally says in this Count that she was the victim of "retaliatory conduct." (Doc. 1 at 80). With respect to the general retaliation assertion, while her motion provides the standard for assessing Title VII retaliation claims, this Count, and the allegations contained in it, describe a "sexual harassment" claim—which has *different* elements than a retaliation claim. *See Williams v. Eab Consulting Grp., LLC*, No. 6:19-CV-2090-JA-GJK, 2022 WL 22598661, at *2 (M.D. Fla. Mar. 21, 2022), *report and recommendation adopted*, No. 6:19-CV-2090-JA-GJK, 2022 WL 22598654 (M.D. Fla. Apr. 5, 2022) (setting forth elements for Title VII sexual harassment claim and for Title VII retaliation claim). Indeed, the plaintiff repeatedly refers to Count III as a "sexual harassment" claim, it is pleaded consistently with a sexual harassment claim, and the complaint does not refer to a cause of action for retaliation. Thus, it is consistent with the complaint to read Count III as alleging a claim for sexual harassment in violation of Title VII.

Similarly, while the complaint makes reference to racially inappropriate text messages and comments, the plaintiff does not plead that she is a member of a racially protected class or attempt to assert a race-based discrimination claim.

Under Title VII, sexual harassment can be actionable as a sex discrimination claim in two scenarios: "(1) through an adverse employment action; and (2) 'through the creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of employment.'" *Malone v. TDMW Mgmt. Inc.*, No. 5:21-CV-180-LCB, 2022 WL 507436, at *3 (N.D. Ala. Feb. 18, 2022) (quoting *Jackson v. Ala. Dep't*

*of Corr.*, 643 F. App'x 889, 891 (11th Cir. 2016) (per curiam)); *Anderson v. Fla. Mem'l Univ., Inc.*, No. 1:21-CV-24014-DPG, 2022 WL 19402479, at *5 (S.D. Fla. Oct. 4, 2022) (permitting hostile work environment claim under Title VII and FCRA to proceed but not sex discrimination and retaliation claims where "titles of . . . [the] counts differ[ed], [but] the allegations [were] substantively the same"). Hence, Count III, like Count I, alleges a form of sex discrimination in violation of Title VII.

Unlike Count I, which is pleaded as an "adverse employment action" sex discrimination claim (constructive discharged based on gender), Count III is consistent with a "hostile working environment sexual harassment" claim. *Anderson*, 2022 WL 19402479, at *4 & nn.2 & 3. To establish a prima facie case of hostile working environment sexual harassment by an employer, an employee must show: (1) that she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the complained-of harassment was based on sex; "(4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir.2004)); *accord Anderson*, 2022 WL 19402479, at *4 n.2.

The Eleventh Circuit has repeatedly recognized that Title VII is not a general civility code and that "[s]exual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999) (en banc). To rise to the level of discrimination, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or

conditions of employment, and this subjective perception must be objectively reasonable." *Id.* at 1246 (quotations omitted). "The objective component of this analysis [considers four factors]: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* The Court must proceed with "common sense, and an appropriate sensitivity to social context, to distinguish between general office vulgarity and the conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 811 (11th Cir.2010) (en banc) (quotations omitted).

The difficulty the plaintiff faces here is that her sex-based allegations are vague and conclusory. Indeed, the three primary sex-based allegations are these: "Plaintiff was subjected to sexual harassment by her co-worker, Alberto Vazquez;" "Vazquez made repeated comments about her body as well as comments regarding what he would do to her, in a sexually suggestive manner;" and "He also continued to sexually harass Plaintiff through his sexually suggestive text messages." (Doc. 1, ¶¶ 42, 43, 54). The plaintiff provides specific quotes about racially inappropriate comments made to her, but the complaint doesn't relate those allegations to the alleged sexual harassment. No other details about the sexual harassment are explained or provided. The nature of the comments is absent. The frequency of the comments is absent. The duration of the conduct is lacking. While the plaintiff concludes by saying she "could no longer work under these horrific conditions" (Doc. 1, ¶ 55), the nature of the conduct alleged (using, e.g., general descriptions like, "sexually suggestive manner"), doesn't show how the conduct rises to the level of conduct recognized under the Eleventh Circuit case law to establish a claim for sexual harassment.

Unfortunately for the plaintiff, the Eleventh Circuit has repeatedly rejected hostile environment sexual harassment claims based on conduct that is more serious than the conduct alleged here. *See, e.g., Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806-08 (11th Cir. 2012) (finding that an employee's conduct of grabbing the plaintiff employee's "butt 'two to five times,' " "talk[ing] dirty" to the plaintiff, stating that he wanted to "fuck" her and "lick" her all over, and asking the plaintiff on multiple dates despite her continued refusal was not objectively severe or pervasive to support a Title VII claim); *Leeth v. Tyson Foods, Inc.*, 449 F. App'x 849, 853 (11th Cir. 2011) (holding that conduct was not sufficiently severe or pervasive where a manager allegedly attempted to pull the plaintiff into his lap, made comments to the plaintiff about wanting to "ram his tongue down her throat," came to the plaintiff's house uninvited, and called her on multiple occasions to ask her to go out with him); *Latrece Lockett v. Choice Hotels Intern., Inc.*, 315 F. App'x 862, 865-66 (11th Cir. 2009) (finding that alleged harassment was not severe where harasser made crude sexual remarks to plaintiff several times a week for four months and briefly touched her on two occasions); *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, (11th Cir. 2008) (finding that weekly comments by her supervisor that Plaintiff "looked hot" and should wear tighter clothing, and a statement to her husband that he was eating Plaintiff for lunch were not severe or pervasive); *Mitchell v. Pope*, 189 F. App'x 911, 913-14 (11th Cir. 2006) (holding conduct was not "severe" enough where plaintiff alleged 16 specific instances of offensive conduct by her supervisor, including offensive utterances and three instances in which he touched or attempted to touch her); *Mendoza v. Borden*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc) (found severity "clearly absent" where over eleven month period plaintiff alleged one instance of supervisor saying to plaintiff "I'm getting fired up;" one occasion where he rubbed his hip

against Plaintiff while touching her shoulder and smiling; two instances in which he made a sniffing sound while looking at plaintiff's groin and one instance of sniffing without looking at her groin; and the supervisor's "constant" following and staring at plaintiff in a "very obvious fashion."); *compare with Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding that conduct *was* sufficiently severe or pervasive where the female plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her.").

The plaintiff's conclusory allegations that she suffered great embarrassment and humiliation, and mental and physical anguish, cannot overcome the objective lack of frequency and severity of the alleged comments. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1248 (11th Cir. 1999) (noting frequency of conduct does not compensate for absence of other three factors—i.e., physically threatening or humiliating conduct, interference with job performance, and severity). Again, unfortunately, the plaintiff has cited no case in which a plaintiff established "sufficiently severe or pervasive" sexual harassment without showing that the conduct was at least either severe or frequent. *See, e.g., Reeves v. C.H. Robinson Worldwide, Incl*, 594 F.3d 798, 813-14 (11th Cir. 2010) (concluding that the daily use of sexually explicit language at work by male co-workers was sufficiently pervasive and humiliating that it created a genuine issue of material fact whether a hostile work environment existed, even though the conduct was not "severe" relative to the conduct found in other cases and did not involve any physically threatening behavior).

Accordingly, her motion for default judgment on Count III should be **denied**.

        *4.      Count IV: Sexual Harassment in Violation of the FCRA*

Count IV is pleaded as the FCRA equivalent to Count III. (Doc. 1 at 13–14). And, like Count III, Count IV is styled and pleaded as a sexual harassment claim. Interestingly, here, despite the similarity in pleading, on this Count Plaintiff correctly discusses the elements of discrimination. (Doc. 45 at 10). So, for the same reasons provided above when addressing Count III, it is consistent with the complaint to understand Count IV as a claim for hostile work environment sexual harassment.

Under the FCRA, a sexual harassment and gender discrimination claim receives the same analysis as those claims under Title VII. *Williams*, 2022 WL 22598661, at *2 (first quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010); then citing *Tucker v. Fla. Dep't of Transportation*, 678 F. App'x 893, 895 n.1 (11th Cir. 2017)).[9] Accordingly, because Plaintiff has failed to establish a claim under Count III, her request for a default judgment under Count IV is also due to be **denied**.

---

[9] To state a hostile working environment sexual harassment claim under the FCRA, the plaintiff must allege: (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *Anderson*, 2022 WL 19402479, at *4 (citing *Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339 (S.D. Fla. Jan. 3, 2014)).

## IV. RECOMMENDATION

Accordingly, for the foregoing reasons, I recommend that the plaintiff's motion for default judgment be **denied** in its entirety.

**RECOMMENDED** in Ocala, Florida on August 5, 2024.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties